CONTINENTAL INSURANCE CO. y MANUEL F. BOU, demandantes y recurrentes, *v.* ISLETA MARINA, INC., ISLETA MARINA CORP., CLUB NÁUTICO DE SAN JUAN, SATURNINO FERMAINT, J. LA TORRIENTE, JOHN DOE y ASEGURADORA X, demandados y recurridos.

*Número:* R-77-374 *Resuelto:* 23 de febrero de 1978

*José E. Sánchez Solivan* y *Sigfredo A. Irizarry Semidei,* abogados de los recurrentes; *Géigel, Silva, Soler Favale & Arroyo,* abogados del Club Náutico; *Benicio Sánchez Castaño* y *Benicio Sánchez Rivera,* abogados de Saturnino Fermaint y J. La Torriente.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

Los recurrentes The Continental Insurance Company y Manuel F. Bou—aseguradora y propietario respectivamente de una embarcación—presentaron demanda contra Isleta Marina Corp.,[1] Club Náutico de San Juan, Saturnino Fermaint, J. La Torriente, John Doe y Aseguradora X, alegando lo siguiente: que el día 9 de junio de 1975 dicha nave se hundió y se perdió en las cercanas aguas costaneras de Ceiba, Puerto Rico; que "los demandados habían contratado y efectuado la reparación y afinamiento del motor y la corrección de un problema de recalentamiento de la embarcación antes mencionada en o alrededor de la fecha en que la misma se hundió; y "[c]omo resultado del incumplimiento *de las obligaciones de los demandados para con el codemandante Manuel F. Bou en relación con la adecuacidad de las reparaciones arriba indicadas,* y mediando negligencia, impericia y culpa de los demandados, *la embarcación se hundió,* según antes se expresa, y los demandantes sufrieron pérdidas y daños ascendentes a $55,000.00 la cual suma adeudan y deben compensar los demandados a los demandantes." (Bastardillas

---

[1] Subsiguientemente desistieron su acción contra Isleta Marina, Inc. e Isleta Marina Corp.

nuestras.) Reclamaron en concepto de daños la suma de $55,000.00.

Los demandados formularon sus respectivas contestaciones negando los hechos; posteriormente, como resultado de no haber éstos respondido a unos interrogatorios servídoles, como sanción la ilustrada sala sentenciadora eliminó sus alegaciones, señaló y celebró vista en rebeldía y oportunamente dictó sentencia declarando sin lugar la demanda. Entre sus determinaciones fácticas consignó:

"3. El único testigo que declaró en la vista celebrada fue el co-demandante Manuel F. Bou Caro, quien es dueño de la lancha envuelta en este caso, llamada 'Carmencita', de 36', 'Sport Fisherman Roayal', [sic] la cual adquirió en 1973.

4. El demandante guardaba su lancha en el Club Náutico de San Juan, por cuyas facilidades le pagaba la suma de $100.00 mensuales.

5. El co-demandado Saturnino Fermaint tenía un taller de reparaciones en el Club Náutico, y le daba servicio de mantenimiento a la lancha del demandante.

6. Durante el año 1975 se le practicaron varias reparaciones a la lancha, específicamente en los meses de abril, mayo y junio.

7. El testigo no se encontraba en la lancha cuando ésta se hundió. Se enteró del hundimiento por información que le dieron las personas a quienes la había prestado. Fue al sitio donde se hundió la lancha y no la pudo encontrar ni jamás la recuperó.

8. Como resultado de dicho alegado hundimiento, la Continental Insurance Company le pagó a Manuel F. Bou y al Banco Crédito y Ahorro Ponceño, la suma de $50,000.00, bajo el contrato de seguro.

9. Aunque en la demanda se alegó que el hundimiento se debió a la 'negligencia, impericia y culpa de los demandados', sin especificar cuál de ellos, no se probó que hubiese mediado negligencia alguna de las partes demandadas. La única prueba es a los fines de que tanto el demandado Fermaint, como el co-demandado La Torriente, hicieron algunas obras de reparación en la embarcación. No se demostró el nexo causal entre el hundimiento y dichas reparaciones.

10. A pesar de que los demandados se encontraban en rebeldía, por haber dejado de cumplir con la orden del tribunal que les dio término para contestar el interrogatorio, ese hecho, de por sí sólo, no implica que el demandante tenga derecho a prevalecer. Las alegaciones de negligencia, impericia y culpa de los demandados constituyen meras conclusiones de derecho, que no resultaron apoyadas por prueba alguna."

Y formuló las siguientes apreciaciones de derecho:

"5. Según ha expresado nuestro Tribunal Supremo, el efecto de que se anote la rebeldía de un demandado, es que quedan admitidas todas las materias bien alegadas en la demanda, e impide que tal demandado ofrezca prueba en su propio beneficio y en contra de lo alegado por el demandante, pero, sin embargo, un demandado en rebeldía tiene derecho a contrainterrogar a los testigos del demandante, a impugnar la cuantía de los daños reclamados y a apelar de la sentencia. *Rivera* v. *Goitía* [*sic*] 70 D.P.R. 30, 33.

6. En el caso de autos correspondía a la parte demandante demostrar cual de los tres demandados que quedaban en el pleito, a saber: el Club Náutico de San Juan, Saturnino Fermaint o J. La Torriente, fue la persona que incurrió en negligencia, impericia y culpa. Como hemos expuesto en nuestras determinaciones de hechos, la parte demandante no presentó prueba alguna de que uno, dos o todos los demandados hubiesen incurrido en tal conducta.

7. Como hemos señalado antes, la Regla 34.4, que autoriza la imposición de sanciones, contempla varias alternativas, o sea, el tribunal puede imponer cualquiera de las sanciones allí dispuestas. En este caso, el tribunal optó por la sanción de eliminar totalmente las alegaciones de la parte desobediente aunque también pudo adoptar otra medida. Véase Wigmore, *On Evidence*, Tomo 6, página 431. Por lo tanto, recaía sobre la parte demandante, el peso de probar la negligencia, impericia y culpa imputada a los demandados y de probar además, cuál de los demandados era imputable. Como hemos visto, dejó de hacerlo, y por ende, no descargó su obligación impuesta por la Ley de Evidencia. 32 LPRA 1971. Correspondía al demandante la obligación de demostrar, por la preponderancia de la prueba, la relación entre el daño ocurrido y la conducta o actividad de uno, varios o todos los demandados, y de probar, además que el daño

fue producido por la culpa o negligencia de uno, varios, o todos los demandados, y, en todo caso, probar la relación entre las partes, a los fines de colocar al tribunal en posición de determinar la responsabilidad vicaria. *Burgos Quiñones* v. *Autoridad Fuentes Fluviales*, 90 D.P.R. 613. No lo hizo y por lo tanto no puede prevalecer."

Expedimos orden de mostrar causa ante los planteamientos de los recurrentes relativos a las consecuencias de una anotación de rebeldía.

## I

La génesis de la institución de sentencia en rebeldía se remonta al derecho consuetudinario inglés y al auto en equidad denominado *pro confesso* (según confesado). El Tribunal Supremo de los Estados Unidos en el caso rector de *Thomson* v. *Wooster*, 114 U.S. 104 (1885), citando una decisión inglesa [2] destacó:

". . . el método en equidad de conceder un auto *pro confesso* está de acuerdo con las reglas y prácticas de los tribunales; si el demandado incurre en rebeldía por *nil dicit* [no decir nada], se dicta inmediatamente sentencia por la deuda, o en todos los casos en que lo reclamado es precisable; pero cuando la materia reclamada consiste en daños, se concede un decreto interlocutorio; después del cual se expide un auto de investigación para averiguar los daños, a lo cual sigue la sentencia." (Traducción nuestra.)

Nuestras reglas civiles tanto en el pasado como al presente, tomaron como modelo las federales. Esencialmente, la característica medular tradicionalmente aceptada del mecanismo procesal de una rebeldía, consiste en que los hechos expuestos en una reclamación se consideran ciertos, y en contra de los mismos, la parte contraria no puede presentar prueba para controvertirlos. La tendencia moderna muestra como razón de ser adicional, la obligación de los tribunales de evi-

---

(2)*Hawkins* v. *Crook*, Ch. Ct. 1729, 2 P. Wms. 556. Sobre el historial, consúltese 10 Wright & Miller, *Federal Practice & Procedure*, 245–251; 6 Moore, *Federal Practice*, secs. 55.01–55.02.

tar que la adjudicación de causas se paralicen simplemente por la circunstancia de que una parte opte por detener el proceso de litigación. (³) Se da la oportunidad al adversario de refutar la reclamación; si por su pasividad o temeridad opta por no defenderse, como remedio coercitivo, se expone a que se dicte sentencia en su contra.

En armonía con la doctrina prevaleciente, como regla general, el trámite de un caso en rebeldía—sea por no formularse contestación o como una sanción judicial, Reglas 45.2 y 34.4 respectivamente de Procedimiento Civil—tiene como consecuencia jurídica que se estimen aceptadas todas y cada una de las materias bien alegadas en la demanda: *Rodríguez v. Tribunal Superior*, 102 D.P.R. 290, 294 (1974); *Rivera v. Goytía*, 70 D.P.R. 30, 33 (1949); *Pérez v. Haeussler*, 65 D.P.R. 879, 882 (1946); *Muñiz v. "El Zenit"*, 27 D.P.R. 29, 34 (1919); *Muñoz v. Sepúlveda*, 26 D.P.R. 67, 70 (1917). Cabe mencionar que el concepto de "materias bien alegadas" significa que en una rebeldía se consideran admitidos los "hechos correctamente alegados." 10 Wright & Miller, *supra*, 282. (⁴) Y ello no priva al tribunal de evaluar

---

(³)La Regla 34.4 de Procedimiento Civil vigente reza: "Si una parte, o un funcionario o agente administrador de una parte, dejare intencionalmente de comparecer ante el funcionario que ha de tomar su deposición después de haber sido debidamente notificado; o dejare de presentar y notificar contestaciones a los interrogatorios sometidos de acuerdo con la Regla 30 después de habérsele notificado debidamente los mismos; el tribunal, mediante moción y notificación, podrá eliminar total o parcialmente cualquier alegación de esa parte, o desestimar el pleito o procedimiento o alguna parte del mismo, o *dictar* sentencia en rebeldía contra dicha parte." (Bastardillas nuestras.)

(⁴)*Thomson v. Wooster*, 114 U.S. 104 (1885); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63–64 (1971), revocado por otras razones, 409 U.S. 363 (1973). Algunos casos deciden que se admite la negligencia sin que la parte actora tenga que desfilar prueba al respecto: *Johnson v. Riverside Hotel, Inc.*, 399 F.Supp. 1138 (1975); *Flaks v. Koegel*, 504 F.2d 702 (2d Cir. 1974); *Caribbean Produce Exchange v. Caribe Hydro-Trailer, Inc.*, 65 F.R.D. 46 (1974); *United States ex rel. Motley v. Rundle*, 340 F.Supp. 807 (1972); *Funkhouser v. Million*, 161 S.E.2d 725 (1968). Además: *Default Judgment—Proof of Liability*, 8 A.L.R.3d 1070, sec. 3; 47 Am.Jur. 2d, *Judgments*, sec. 1194; 10 Wright & Miller, *supra*, 279–286.

si en virtud de tales hechos, no controvertidos, existe válidamente una causa de acción que amerita la concesión del remedio reclamado.

La Regla 45.2 de Procedimiento Civil dispone:

"Podrá dictarse sentencia en rebeldía en los siguientes casos:

(a) *Por el secretario.* Cuando la reclamación del demandante contra un demandado sea por una suma líquida o por una suma que pueda liquidarse mediante cómputo, el secretario, a solicitud del demandante y al presentársele declaración jurada de la cantidad adeudada, dictará sentencia por dicha cantidad y las costas contra el demandado cuando éste haya sido declarado en rebeldía por no comparecer, siempre que no se trate de un menor o persona incapacitada.

(b) *Por el tribunal.* En todos los demás casos la parte con derecho a una sentencia en rebeldía la *solicitará del tribunal;* pero no se dictará sentencia en rebeldía contra un menor o persona incapacitada a menos que estén representados por el padre, madre, tutor, defensor judicial u otro representante que haya comparecido en el pleito. Cuando la parte contra la cual se solicita sentencia en rebeldía *haya comparecido en el pleito,* dicha parte será notificada con copia de la solicitud de sentencia con 3 días por lo menos de antelación a la vista de dicha solicitud. *Si para que el tribunal pueda dictar sentencia o para ejecutarla, se hace necesario fijar el estado de una cuenta o determinar el importe de los daños, o comprobar la veracidad de cualquier aseveración mediante prueba, o hacer una investigación de cualquier otro asunto, el tribunal deberá celebrar las vistas que crea necesarias y adecuadas o encomendar la cuestión a un comisionado."*
(Bastardillas nuestras.)

 Se advierte que la facultad del Secretario para dictar una sentencia en rebeldía está limitada a que la reclamación: (1) sea por una suma líquida o liquidable mediante cómputo; (2) dicha suma se acredite mediante declaración jurada; (3) el demandado no haya comparecido y, (4) no sea un menor o incapacitado. Como corolario, cualquier otra sentencia en rebeldía tiene que ser dictaminada por el tribunal, que puede emitirla aun habiendo comparecido el demandado, irrespectivamente de si la cuantía es líquida o no. Ello in-

cluye daños para lo cual puede señalar vista, exigiendo prueba para "determinar [su] importe . . . , o comprobar *la veracidad de cualquier aseveración.*"

 Existe apreciable diferencia entre la acción puramente ministerial del secretario y la función decisional del juez, según corresponda a uno u otro adjudicar un pleito en rebeldía. Resulta obvio, que los tribunales no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía. Para el descargo de tan delicado ministerio, la ley reconoce que el proceso de formar consciencia judicial exige la comprobación "de cualquier aseveración" mediante prueba. A tal efecto, el tribunal "deberá celebrar las vistas que crea necesarias y adecuadas." Y con referencia a una parte demandada en rebeldía—que ha comparecido previamente—le cobija el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los testigos de la parte demandante, impugnar la cuantía y apelar la sentencia. No renuncia a las defensas de falta de jurisdicción ni de que la demanda no aduce hechos constitutivos de una causa de acción en favor del reclamante. *Rivera* v. *Goytía,* supra, 33; *Pérez Hnos.* v. *Oliver, et al.,* 11 D.P.R. 397 (1906). En otras palabras, un trámite en rebeldía no garantiza *per se,* una sentencia favorable al demandante; el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho.

## II

Con este trasfondo, confrontemos el derecho reseñado con las alegaciones de la demanda. Se expone que "los demandados habían contratado y efectuado la reparación y afinamiento del motor y la corrección de un problema de recalentamiento de la embarcación . . . en o alrededor de la fecha en que la misma se hundió . . . ." y que ". . . como resultado del incumplimiento de las obligaciones de los demandados . . . en relación con la adecuacidad de las reparaciones arriba indicadas

. . . [por la] negligencia, impericia y culpa de los demandados
. . . se hundió."

■■■ Aunque las mismas no son el mejor ejemplo de redacción, sí consignan hechos suficientes—no controvertidos por los demandados recurridos en rebeldía—que razonablemente abonan y permiten una conclusión de responsabilidad o negligencia, y además, una deducción sobre causalidad entre las reparaciones y el siniestro acaecido. En vista de ello, los recurrentes razonablemente podían descansar en tales alegaciones, prescindiendo de prueba aparte de la cuantía de daños, salvo que el tribunal de instancia en el ejercicio de su discreción, deseara comprobar la veracidad de tales alegaciones y expresamente advirtiera al notificar su señalamiento a los demandantes recurrentes, cosa que no hizo. Bajo cualesquiera circunstancias, la cuantía de daños debe ser objeto de prueba. 10 Wright & Miller, *supra*, sec. 2688, págs. 280–1 .

*No habiendo advertido el tribunal de instancia a la parte actora de la necesidad de corroborar sus alegaciones sobre negligencia y relación causal, se incurrió en error que amerita la revocación de la sentencia y que devolvamos el caso a la sala de origen, para la celebración de vista conforme los términos de esta opinión.*

El Juez Asociado Señor Rigau no intervino.