Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Galaxia Performance LLC<br><br>Apelada<br><br>vs.<br><br>Roberto Gutiérrez t/c/c, Nancy Martínez t/c/c Gutiérrez-Martínez, Sociedad Legal de Gananciales compuesta por ambos<br><br>Apelantes | KLAN202400193 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2022CV03879<br><br>Sobre: Cobro de Dinero – Ordinario, Ejecución de Hipoteca: Propiedad Residencial |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de marzo de 2024.

Comparece ante nos, el señor Roberto Gutiérrez, la señora Nancy Martínez, y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, Matrimonio Gutiérrez-Martínez o parte apelante), en solicitud de que se revoque la "Sentencia en Rebeldía" dictada el 15 de diciembre de 2023,[1] por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante dicho dictamen el foro primario facultó a Galaxia Performance, LLC. (a continuación, Galaxia o parte apelada) para que, en caso de incumplimiento de lo ordenado, pueda ejecutar el gravamen hipotecario por medio de la venta pública del bien inmueble hipotecado.

Examinada la solicitud de autos, el "Alegato en Oposición a Apelación", la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, revocamos la determinación apelada, por los fundamentos que expondremos a continuación.

---

[1] Notificada el 18 de diciembre de 2023.

Número Identificador

SEN2024 _____

**-I-**

El 2 de diciembre de 2022, Galaxia presentó una "Demanda" por cobro de dinero y ejecución de hipoteca contra el Matrimonio Gutiérrez-Martínez. En síntesis, alegó que, el 13 de marzo de 2006, la parte apelante suscribió un pagaré a favor de Doral Bank o a su orden,[2] por la cantidad de $119,983.00, más intereses desde esa fecha, y hasta su saldo total del principal a razón de 6.75% anual. Para garantizar el referido pagaré, ese mismo día, la parte apelante otorgó una hipoteca voluntaria, mediante la Escritura Núm. 78 sobre Hipoteca otorgada ante la Notaria Giselle Feliciano Vega.[3]

En su "Demanda", Galaxia aseguró ser el tenedor buena fe del Pagaré a favor de Doral Bank, y reclamó el pago de $123,866.02, por concepto de principal, más los intereses computados hasta el 1 de febrero de 2022, los intereses a acumularse hasta su total saldo, recargos, costas, gastos y honorarios de abogados.

Surge del tracto procesal que, el 11 de enero de 2023, el Matrimonio Gutiérrez-Martínez compareció ante el Tribunal de Primera Instancia, a través de su representación legal, y solicitó una prórroga de 30 días para presentar alegaciones responsivas o mociones dispositivas. Al día siguiente, entiéndase, el 12 de enero de 2023,[4] el foro primario emitió una "Orden", y concedió la prórroga solicitada.[5] Empero, la parte apelante nunca presentó alegación responsiva.

Así las cosas, el 28 de febrero de 2023, Galaxia presentó una "Moción Sometiendo Emplazamiento Diligenciado y en Solicitud de Orden de Mediación", solicitando que el caso fuese referido al

---

[2] Éste fue suscrito ante la Notaria Giselle Feliciano Vega, bajo el testimonio número 802.
[3] Inscrita al folio 211 del tomo 955 de la finca núm. 4430 de Carolina, Registro de la Propiedad de Carolina, Sección Primera, inscripción decimocuarta.
[4] Notificada en igual fecha.
[5] Véase, SUMAC entrada número 6.

proceso de mediación compulsoria dispuesto en la Ley Núm. 184-2012, *supra.* Por esta razón, el 13 de marzo de 2023,[6] el foro de instancia refirió el caso al Centro de Mediación de Conflictos, (a continuación, Centro de Mediación).

Por su parte, el 14 de diciembre de 2023, el Centro de Mediación compareció ante el Tribunal de Primera Instancia mediante "Moción en Solicitud de Determinación".[7] Informó que se habían celebrado siete (7) reuniones de mediación, y que la representación legal del acreedor compareció a todas. Asimismo, manifestó que, el 16 de octubre de 2023, Galaxia ofreció al Matrimonio Gutiérrez-Martínez una alternativa para retener la propiedad hipotecada la cual, a ese momento, no había sido aceptada ni rechazada por éstos. Finalmente, esbozó que, el 11 de diciembre de 2023, la parte apelada desistió del servicio de mediación.

Al próximo día, o sea, el 15 de diciembre de 2023, Galaxia presentó una "Moción en Solicitud de Anotación de Rebeldía por Falta de Comparecencia y En Solicitud de Sentencia en Rebeldía". En esencia, alegó que, el 16 de diciembre de 2022, se emplazó personalmente al Matrimonio Gutiérrez-Martínez, sin que éstos hubiesen presentado contestación a la "Demanda". Arguyó que, habiéndose cumplido con el requisito jurisdiccional de mediación compulsoria, y dado el hecho de que la parte apelante rechazó la alternativa ofrecida para retener la casa, procedía se dictara una sentencia en rebeldía.

Minutos más tardes, la parte apelante compareció mediante nueva representación legal,[8] y presentó una "Moción Asumiendo Representación y Solicitud de Prórroga", por la cual peticionó un término adicional de 30 días para contestar la "Demanda".

---

[6] Notificada el 14 de marzo de 2023.
[7] Anejo 6 del Apéndice de la Apelación.
[8] Su anterior representación legal solicitó el relevo mediante escrito presentado el 11 de diciembre de 2023.

Sin embargo, ese mismo día,[9] el foro recurrido dictó "Sentencia en Rebeldía" a favor de Galaxia. Mediante dicho dictamen, declaró cumplido el requisito jurisdiccional de mediación compulsoria, y condenó al Matrimonio Gutiérrez-Martínez al pago de $123,866.02, por concepto de principal, más intereses, cargos, costas, gastos y honorarios de abogado, en la forma pactada. En caso de incumplimiento, facultó a Galaxia a ejecutar el gravamen hipotecario.

Inconforme, el 2 de enero de 2024, la parte apelante presentó ante el foro de instancia una "Moción Solicitando Reconsideración". En resumidas cuentas, arguyó que, el Tribunal de Primera Instancia no cumplió con el requisito jurisdiccional de la celebración de una vista o acto de mediación compulsoria, según impone el Art 3 de la Ley Núm. 184-2012, *infra.* A esos efectos, planteó que, "estando en mediación compulsoria[,] el Tribunal no había asumido jurisdicción".

Por su parte, el 26 de enero de 2024, Galaxia presentó su "Moción en Oposición a Solicitud de Reconsideración", y sostuvo que el requisito jurisdiccional establecido en el Art. 3 de la Ley Núm. 184-2012, *infra,* se cumplió el 14 de marzo de 2023, cuando se refirió el caso al Centro de Mediación de Conflictos. En atención a lo cual, esgrimió que el Tribunal de Primera Instancia tenía jurisdicción.

Atendidos los planteamientos de ambas partes, el 26 de enero de 2024,[10] el foro de instancia dictó una "Resolución", y declaró No ha Lugar la "Moción de Reconsideración" presentada por la parte apelante.

---

[9] Notificada el 18 de diciembre de 2023.
[10] Notificada el 30 de enero de 2024.

Aún insatisfecho, el Matrimonio Gutiérrez-Martínez recurre ante nos, y argumenta que el Tribunal de Primera Instancia cometió el siguiente error:

> *Cometió error de derecho al anotar la rebeldía y emitir sentencia contra la parte demandante ya que la parte demandante mediante nueva representación solicitó t[é]rmino para contestar la demandante y la[s] parte[s] habían salido de mediación compulsoria.*

**-II-**

**-A-**

La Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1, expone que, cuando una parte, contra quien se solicite una sentencia que concede remedio afirmativo, haya dejado de presentar alegaciones o de defenderse en otra forma, se anotará la rebeldía. El Tribunal, a iniciativa propia o solicitud de parte, podrá anotar la rebeldía. Sin embargo, la omisión de anotar rebeldía no afectará la validez de una sentencia dictada en rebeldía.

La anotación de la rebeldía tendrá el efecto de que se den por admitidos todos los hechos bien alegados en la demanda o la alegación que se haya formulado en contra del rebelde y se autoriza al tribunal para que dicte sentencia, si ésta procede como cuestión de derecho. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 590 (2011).

El efecto de que se den por admitidos todos los hechos bien alegados está atado al proceso de formar conciencia judicial, el cual "exige la comprobación de cualquier aseveración mediante prueba". *Álamo v. Supermercado Grande, Inc.,* 158 DPR 93, 101 (2002), citando a *Hernández v. Espinosa,* 145 DPR 248, 272 (1998). Resalta el caso que, "los tribunales no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía". *Álamo v. Supermercado Grande, Inc., supra,* a la pág. 102, citando a *Rivera v. Insular Wire*

*Products Corp.*, 140 DPR 912, 931 (1996), que, a su vez, cita a *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809, 817 (1978).

"Un trámite en rebeldía no garantiza, *per se*, una sentencia favorable al demandante; [la parte en rebeldía] no admite hechos incorrectamente alegados como tampoco conclusiones de derecho', ni alegaciones conclusorias". *Continental Ins. Co. v. Isleta Marina*, *supra*, a la pág. 817. Ante ello, quien solicite el remedio, deberá alegar correctamente los hechos específicos que de su faz sean demostrativos que, de ser probados, lo hacen acreedor del remedio reclamado. *Álamo v. Supermercado Grande, Inc.*, *supra*, a la pág. 102.

Anotada la rebeldía, el Tribunal mantiene la facultad de dejarla sin efecto al amparo de la Regla 45.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.3. Lo anterior, condicionado a la existencia de justa causa. *Rivera Figueroa v. Joe's European Shop*, *supra*, a la pág. 591–592 (2011). En reiteradas ocasiones, nuestro Tribunal Supremo ha resuelto que esta regla se debe interpretar de manera liberal, resolviéndose cualquier duda a favor de que se deje sin efecto la anotación o la sentencia en rebeldía *Íd.*, a la pág. 592.

Además, surge el mencionado caso de *Álamo v. Supermercado Grande, Inc.*, *supra*, a las págs. 100-11, que:

> *(…) sabido es que "[e]l propósito de estar sujeto a esta anotación es como disuasivo contra aquellos que puedan recurrir a la dilación como un elemento de su estrategia en la litigación". Toda vez que el trámite en rebeldía se encuentra cimentado en "la obligación de los tribunales de evitar que la adjudicación de causas se paralicen simplemente por la circunstancia de que una parte opte por detener el proceso de litigación", el mismo opera como remedio coercitivo contra una parte adversaria a la cual, habiéndosele concedido la oportunidad de refutar la reclamación, por su pasividad o temeridad opta por no defenderse.*

**-B-**

La Ley Núm. 184-2012, 32 LPRA sec. 2881 *et seq.*, titulada "Ley para Mediación Compulsoria y Preservación de tu Hogar en

los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal", según enmendada, se aprobó con el propósito de crear un proceso de mediación compulsoria ante los tribunales de Puerto Rico, o ante los foros administrativos correspondientes, previo a llevar a cabo un proceso de ejecución de hipoteca.

El Art. 2 (b) de la Ley Núm. 184-2012, 32 LPRA sec. 2881 nota, define la mediación como un "proceso de intervención, no adjudicativo, en el cual un interventor o una interventora neutral (mediador o mediadora) ayuda o asiste a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable para resolver su controversia".

El proceso de mediación compulsoria se encuentra regulado en el Art. 3 de la Ley Núm. 184-2012, 32 LPRA sec. 2882, el cual expone que:

> *Será deber del Tribunal, al presentarse la demanda y diligenciarse el emplazamiento, citar a las partes a una vista o acto de mediación compulsoria que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, en la cual se le informará de formas verbal y por escrito al deudor hipotecario todas las alternativas disponibles en el mercado de acuerdo al tipo de préstamo e inversionista para poder evitar la privación del inmueble al deudor, ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal, incluyendo aquellas alternativas que no dependen de la capacidad económica del deudor, como lo son la venta corta ("short sale"), la dación en pago, entrega voluntaria de título, y otros remedios que eviten que el deudor pierda su hogar o que, de perderlo, se minimicen las consecuencias negativas sobre el deudor.*

> (.........)

> *Lo aquí dispuesto será un requisito jurisdiccional en los procesos a llevarse a cabo ante los Tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda principal del deudor o de los deudores, sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita.*

El carácter jurisdiccional de la celebración de vistas de mediación en un proceso de ejecución de hipoteca fue analizado por nuestro Tribunal Supremo en *Bco. Santander v. Correa García,* 196 DPR 452, 472 (2016). En esencia, nuestra Alta Curia dispuso que:

> *[S]i el tribunal incumple con el requisito de ordenar la celebración de tal vista, no tendrá jurisdicción para proceder a dictar sentencia ni podrá ordenar la venta judicial del inmueble. En consecuencia, las sentencias que el tribunal dicte y las ventas judiciales que ordene sin haber señalado una vista de mediación serán nulas y no tendrán efecto legal alguno.*

Por su parte, ante la necesidad de brindar una protección adicional a los intereses del deudor hipotecario, nuestro Alto Foro recalcó que, durante el proceso de mediación, las partes deben conducirse dentro del marco de la buena fe. *Scotiabank v. SLG Rosario-Castro,* 205 DPR 537, 550 (2020). En específico dispuso que:

> *Así pues, con la vista de mediación el deudor podrá obtener información sobre los remedios que tiene disponibles para evitar la pérdida de su residencia principal y, a su vez, tendrá la oportunidad de sentarse a negociar con su acreedor. Asimismo, añadimos "que el requisito jurisdiccional que impone la Ley [184] se refiere a que ocurra un señalamiento o citación para una vista de mediación, pero la extensión de dicho procedimiento y su resultado dependerán de la conducta de las partes". Íd.*

Nótese que, se parte de la premisa que el deudor hipotecario desconoce sus derechos. Ante ello, se le requiere al acreedor una actitud conducente a brindar todas las alternativas disponibles al deudor, con el fin de que éste pueda retener su propiedad.

En lo que nos atañe, el texto anterior del Art. 3 de la Ley Núm. 184-2012, *supra,* exceptuaba del beneficio de la mediación compulsoria a quien se le hubiera anotado la rebeldía. En términos literales, el primer párrafo del precitado artículo leía como sigue:

> *El deudor tendrá derecho únicamente a un procedimiento de mediación en la acción civil que se le*

*presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal, **siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía** o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal.*

(Énfasis nuestro).

En otras palabras, el deudor hipotecario que no presentara su alegación responsiva o moción dispositiva dentro del término proscrito por las Reglas no tenía derecho a que el Tribunal ordenara la mediación. Asimismo, excluía del beneficio de la mediación compulsoria a aquellas partes que, por motivo de sanción, se le hayan eliminado sus alegaciones.

Ahora bien, la referida disposición legislativa ha sufrido grandes cambios, para evitar cualquier lenguaje contradictorio, y atemperarla a su propio espíritu según su exposición de motivos. A esos efectos, **la Ley Núm. 73-2022**, **enmendó el Art. 3 de la Ley Núm. 184-2012**, *supra,* **para eliminar cualquier referencia a la anotación de rebeldía**. **Esto**, **con el propósito de evitar la anotación de rebeldía al deudor demandado cuando éste no presenta su alegación responsiva**, **por encontrarse en espera del referido oficial al procedimiento de mediación**. **Añade la Ley Núm. 73-2022**, **que "[a]notar rebeldía previo a que ocurra ese primer esfuerzo de mediación trunca el espíritu de la Ley 184**, *supra,* **y lesiona el derecho reconocido estatuariamente a los deudores demandados"**. (Énfasis provisto). Tras la enmienda, el primer párrafo del Art. 3 de la Ley Núm. 184-2012, *supra,* lee como sigue:

*El deudor tendrá derecho a un procedimiento de mediación en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal. Será deber del Tribunal, dentro de un término de treinta (30) días contados a partir del diligenciamiento del emplazamiento, citar a las partes a una vista o acto de mediación compulsoria que presidirá un mediador.*

**-III-**

Según el tracto procesal reseñado, el 2 de diciembre de 2022, Galaxia presentó una "Demanda" por cobro de dinero y ejecución de hipoteca contra el Matrimonio Gutiérrez-Martínez. Emplazada la parte apelante, el 11 de enero de 2023, su representación legal solicitó una prórroga de 30 días para presentar alegaciones responsivas y/o mociones dispositivas, a computarse a partir de la fecha de la notificación de la orden correspondiente. Al día siguiente, entiéndase, el 12 de enero de 2023,[11] el foro primario emitió una "Orden" por la cual concedió la prórroga solicitada.[12] Sin embargo, el Matrimonio Gutiérrez-Martínez nunca presentó su alegación responsiva dentro del término concedido.

Así las cosas, el 28 de febrero de 2023, Galaxia solicitó que el caso fuese referido al proceso de mediación compulsoria dispuesto en la Ley Núm. 184-2012, *supra*. Por esta razón, el 14 de marzo de 2023, el foro recurrido refirió el caso al Centro de Mediación de Conflictos del Poder Judicial.[13]

De los autos no surge que el foro *a quo*, con posterioridad al referido al Centro de Mediación, haya advertido a la parte apelante sobre la posibilidad de dictar sentencia en rebeldía. Por el contrario, el 21 de noviembre de 2023, Galaxia presentó una "Moción Informativa sobre Acuerdo y en Solicitud de Orden de Paralización y Archivo Administrativo", en la cual reconoció que las partes estaban realizando esfuerzos para alcanzar acuerdos que pongan fin al pleito.[14] Tal información fue confirmada mediante la "Moción en Solicitud de Determinación", donde se informa que, durante el curso del año 2023 se celebraron siete (7) reuniones de mediación, siendo esta última el 11 de diciembre de 2023.

---

[11] Notificada en igual fecha.
[12] Véase, SUMAC entrada número 6.
[13] Véase, Anejo 3 del alegato; SUMAC entrada número 8.

A pesar de lo anterior, el 15 de diciembre de 2023, Galaxia solicitó se le anotase la rebeldía al Matrimonio Gutiérrez-Martínez. Ese mismo día, el Tribunal de Primera Instancia emitió "Sentencia en Rebeldía" en favor de la parte apelada. Fundamentó su dictamen en que la parte apelante "fue emplazada personalmente el día 16 de diciembre de 2022... [y] se le anotó la Rebeldía... , por no haber contestado la demanda dentro del término dispuesto en ley".[15]

En su escrito, el Matrimonio Gutiérrez-Martínez argumenta que el foro primario incidió al anotar la rebeldía y emitir sentencia, "aun cuando se había anunciado representación legal nueva... [y esta] solicit[ó] prórroga para contestar la [Demanda]".[16] Tiene razón.

Conforme el derecho discutido, la Ley Núm. 184-2012, *supra,* impuso el requisito jurisdiccional de mediación compulsoria en los casos de ejecución de hipoteca. En lo que nos concierne, **el Art. 3 de la Ley Núm. 184-2012**, *supra*, **se enmendó a través de la Ley Núm. 73-2022**, **debido a que**, **el acreedor hipotecario solicitaba la anotación de rebeldía sobre el deudor demandado**, **quien no había presentado su alegación responsiva en espera del referido oficial al procedimiento de mediación**. **Para evitar esto**, **se eliminó cualquier referencia a la anotación de rebeldía contenida en el Art. 3 de la Ley Núm. 184-2012**, *supra*. **Al aprobar la Ley Núm. 73-2022**, **el legislador dispuso que**, "[a]**notar rebeldía previo a que ocurra ese primer esfuerzo de mediación trunca el espíritu de la Ley 184**, *supra,* **y lesiona el derecho reconocido estatuariamente a los deudores demandados**". (Énfasis suplido).

---

[15] Véase, "Sentencia en Rebeldía" pág. 1.
[16] Véase, recurso a la pág. 5.

Notamos que, la "Moción en Solicitud de Anotación de Rebeldía por Falta de Comparecencia y En Solicitud de Sentencia en Rebeldía" presentada por Galaxia se fundamenta en que, "[l]a parte demandada fue emplazada… el día **16 de diciembre de 2022**, por lo que… [h]an transcurrido más de 30 días de habérsele entregado [a] la parte demandada copia del emplazamiento y la Demanda sin que ésta haya presentado alegación responsiva alguna".[17]  Su contención es que, la representación legal de la parte apelante solicitó prórroga de 30 días para contestar la "Demanda" el 11 de enero de 2023,[18] término que vencía el **13 de febrero de 2023**.  Por lo que, a la fecha del **28 de febrero de 2023**, momento en que Galaxia solicitó se refiriera el caso para mediación, "ya había vencido la prórroga concedida por el TPI".[19]

Aquí, la parte apelada nunca solicitó la anotación de rebeldía antes de que el tribunal refiriese el pleito para mediación compulsoria.  **Y es que simplemente no podía hacerlo**.  No es hasta luego de culminado el proceso de mediación compulsoria que, entonces la parte apelada solicita la anotación de rebeldía, **amparándose en que el Matrimonio Gutiérrez-Martínez no contestó la** "**Demanda**" <u>**antes de que se refiriese el pleito para mediación compulsoria**</u>.

Ciertamente, esta petición vulnera el espíritu de la Ley Núm. 73-2022, **que fue precisamente evitar que se le anotase la rebeldía al deudor previo a que ocurra ese primer esfuerzo de mediación**.  Definitivamente, no podemos avalar que, una vez culminado el proceso de mediación, el Tribunal de Primera Instancia dicte sentencia sin permitir que el deudor hipotecario presente lo que en derecho le convenga.  **Máxime cuando la**

---

[17] Véase, apéndice pág. 24; Anejo 7 pág. 1.
[18] A contarse desde la fecha de la notificación de la orden correspondiente, o sea, a partir del 12 de enero de 2023.
[19] Véase, alegato en oposición, pág. 6.

**anotación y sentencia en rebeldía se basan en <u>hechos anteriores</u> al primer esfuerzo de mediación**.

**-IV-**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, revocamos la "Sentencia en Rebeldía" dictada por el Tribunal de Primera Instancia, Sala de Carolina. Se le concede a la parte apelante un término de 10 días para presentar su alegación responsiva, contados a partir de la notificación del mandato. Se devuelve el caso para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones